UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| Anthony M. and Virginia J. Montemurro, ) | Case No. 17bk10230 |
| ) | |
| Debtors. ) | Chapter 11 |
| ) | |
| ) | |
| Walden Investments Group, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Adversary No. 17ap00401 |
| v. ) | |
| ) | Judge Timothy A. Barnes |
| First Nations Bank, F/K/A FNBW Bank ) | |
| F/K/A First National Bank of Wheaton, as ) | |
| Trustee under a Trust Agreement Dated ) | |
| November 21, 1996 and known as Trust ) | |
| Number 1048, *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

Before the court are two motions to dismiss (the "<u>Motions to Dismiss</u>"),[1] brought respectively by First Nations (defined in footnote)[2] and Anthony M. and Virginia J. Montemurro (the "<u>Debtors</u>" and collectively with First Nations, the "<u>Movants</u>"). The Motions to Dismiss seek

---

[1]    A third motion to dismiss has been brought by the United States of America, but that motion is subject to a separate settlement agreement approved by the court and is therefore not discussed herein. The remaining defendants have not, as of the date of this Memorandum Decision, answered or otherwise pled.

[2]    The First Nations Motion to Dismiss (defined *infra*) was originally brought by First Nations Bank F/K/A FNBW Bank F/K/A First National Bank of Wheaton, not personally but as Trustee on behalf of First Nations Bank F/K/A FNBW Bank F/K/A First National Bank of Wheaton, Land Trust #1048 ("<u>FNBT</u>"), solely in its capacity as trustee. Later in the Adversary, Walden was granted leave to add First Nations Bank F/K/A FNBW Bank F/K/A First National Bank of Wheaton ("<u>First Nations Bank</u>") as a defendant individually. *See* Order Amending Adversary Caption [Adv. Dkt. No. 39] (the "<u>Corrective Order</u>"). The Corrective Order also allowed First Nations Bank to join the First Nations Motion to Dismiss. For the purposes of this Memorandum Decision, FNBT and First Nations Bank will be referred to collectively as "<u>First Nations</u>," unless circumstances require their more specific appellation be used.

dismissal of the Complaint to Determine Extent and Priority of Lien [Adv. Dkt. No. 1] (the "Complaint") filed by Walden Investments Group, LLC ("Walden") in the above-captioned adversary proceeding (the "Adversary"). The Complaint seeks a declaratory judgment regarding Walden's interest, if any, in 4300-4306 West Berteau Avenue, Chicago, Illinois (the "Property"), arising out of Walden's service as state court-appointed receiver prior to the commencement of the underlying, above-captioned bankruptcy case (the "Main Case").

The Motions to Dismiss challenge the sufficiency of the Complaint in light of this court's previous rulings on Walden's motion for relief from stay brought in the Main Case. Each of the Movants, however, mistakes the nature of that ruling and the incorrectly narrows the Complaint to fit with that mistaken nature. Each also mistakes the *res judicata* and estoppel effect of rulings on motions for relief from stay. As each of the Movants' premises are mistaken, the Motions to Dismiss are infirm. As a result, by separate order issued concurrently with this Memorandum Decision, the Motions to Dismiss are denied.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1) & (c); *Wellness Int'l Network, Ltd. v. Sharif*, — U.S. —, 135 S. Ct. 1932, 1939 (2015); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough"). Instead, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

A proceeding to determine the validity, priority, or extent of a lien or other interest in property is an adversary proceeding under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Fed. R. Bankr. P. 7001(2), and is a core proceeding expressly set forth in 28 U.S.C. § 157(b)(2)(K). Declaratory judgments relating to the same are also adversary proceedings, Fed. R. Bankr. P. 7001(9), and are clearly within the court's general authority. 28 U.S.C. § 2201 (the Federal Declaratory Judgment Act) (affording "any court of the United States" the power of declaratory judgment); *U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Assoc., Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631 (2d Cir. 1999) (holding that bankruptcy court, in a core proceeding, may

decide declaratory judgment), *cert. denied* 529 U.S. 1038 (2000); *In re Ace Track Co., Ltd.*, 556 B.R. 887, 899 (Bankr. N.D. Ill. 2016) (Barnes, J.) (same).

What remains is this court's constitutional authority. *Stern v. Marshall*, 564 U.S. 462 (2011). Claims resolution is a process that only occurs in the context of a bankruptcy case, and is thus both a core proceeding and within the court's constitutional authority. 28 U.S.C. § 157(b)(2)(K); *In re Kelco Metals, Inc.*, 532 B.R. 912, 914 (Bankr. N.D. Ill. 2015) (Barnes, J.). A determination of the extent of Walden's interest in the Property is part and parcel to a determination of Walden's claim in the Main Case,[3] and thus, is also within the court's constitutional authority. *Paloian v. LaSalle Bank Nat'l Ass'n (In re Doctors Hosp. of Hyde Park, Inc.)*, 508 B.R. 697, 703 (Bankr. N.D. Ill. 2014) (Schmetterer, J.). Further, all parties have consented to this court's entry of a final order (the Debtor by petitioning for chapter 11 relief, and Walden and First Nations by each filing a proof of claim) or have impliedly consented to this court's jurisdiction, and thus the court may constitutionally hear and determine the matters as core matters. *Matilla v. Radco Merch. Servs., Inc. (In re Radco Merch. Servs., Inc.)*, 111 B.R. 684, 686 (N.D. Ill. 1990); *see also Wellness*, 135 S. Ct. at 1939; *Richer*, 798 F.3d at 490.

Accordingly, determination of the Motions to Dismiss is within the scope of the court's jurisdiction and constitutional authority.

## HISTORY

At some time prior to 2013, the Property in question became vacant and fell into disrepair. As a result, the City of Chicago commenced an abatement action in the Illinois state courts. The judge in that matter, pursuant to the authority set forth in 65 Ill. Comp. Stat. 5/11-31-2, appointed Walden as a receiver over the Property. In that role, Walden maintained the Property and, ultimately and pursuant to order of the state court, demolished the structure thereon. Despite having completed substantially all of its work in 2016, Walden did not, however, obtain an order of compensation from the state court prior to the commencement of the Main Case on March 31, 2017 (the "Petition Date"). No state court order secured Walden's compensation in any way.

Walden, after the commencement of the Main Case, has taken a variety of steps to attempt to rectify this condition. The matter raised in this Adversary is one of those steps, and turns in part on an interpretation of what has taken place in the Main Case. In particular, it turns on the court's ruling on Walden's unsuccessful, earlier attempt to obtain relief from the automatic stay. With respect to that matter, the court has taken into account the following:

(1) Motion to Lift Automatic Stay [Dkt. No. 40] (the "Relief from Stay Motion");

(2) Objection of First Nations Bank to Walden Investments Group, LLC's Motion to Lift Automatic Stay [Dkt. No. 49];

(3) Debtors' Response to Motion to Lift Automatic Stay of Walden Investments Group, LLC [Dkt. No. 50];

---

[3] Official Form 410 of Walden Investments Group, LLC dated May 1, 2017 [Claim No. 7], as amended on August 7, 2017 (the "Proof of Claim").

3

(4) Order [Denying for the Reasons Stated on the Record Motion for Relief from Stay] [Dkt. No. 55]; and

(5) Transcript of Hearing Re: Motion for Relief from Stay as to Real Estate Filed by Stephen Peck on Behalf of Walden Investment [sic] Group, LLC Before The Honorable Timothy A. Barnes United States Bankruptcy Court Judge [Dkt. No. 61] (the "Stay Hearing Transcript").[4]

On the Relief from Stay Motion, the court conducted hearings on June 6, 2017 and July 26, 2017, and ruled orally at the latter hearing.

Following the denial of the Relief from Stay Motion, Walden commenced this Adversary, wherein the matter before the court arises. In further considering the matter, the court has considered the following:

(1) Complaint;

(2) First Nations Bank as Trustee's Motion to Dismiss Complaint to Determine Extent and Priority of Lien [Adv. Dkt. No. 20] (the "First Nations Motion to Dismiss");

(3) Debtors' Motion to Dismiss Complaint to Determine Extent and Priority of Lien [Adv. Dkt. No. 23];

(4) Order [Scheduling Motions to Dismiss] [Adv. Dkt. No. 28];

(5) Plaintiff, Walden Investments Group LLC's Response to Debtors' Motion To Dismiss the Complaint To Determine the Extent and Priority of Lien [Adv. Dkt. No. 33];

(6) Plaintiff, Walden Investments Group LLC's Response to First Nations Bank as Trustee's Motion To Dismiss the Complaint To Determine the Extent and Priority of Lien [Adv. Dkt. No. 35] (the "Response");

(7) First Nations Bank as Trustee's Reply to Plaintiff, Walden Investments Group LLC's Response to First Nations Bank as Trustee's Motion To Dismiss the Complaint To Determine the Extent and Priority of Lien [Adv. Dkt. No. 40]; and

(8) Debtors' Reply to Walden Investments Group, LLC's Response to Motion to Dismiss [Adv. Dkt. No. 42].

So as not to run afoul of Rule 12(d) of the Federal Rules of Civil Procedure (the "Civil Rules"), the court has conducted its review of exhibits submitted in conjunction with the foregoing accordingly. The only exhibits submitted by the parties, however, were excerpts of the Stay Hearing Transcript. The court has also conducted hearings on September 13, 2017, November 1, 2017 and December 13, 2017 (the "Hearings"), and taken into account the arguments made at those Hearings.

---

[4] The Stay Hearing Transcript is replete with transcription errors. Where relevant herein, the court will note corrections.

4

Though these items do not constitute an exhaustive list of the filings in the Main Case and the Adversary, the court has taken judicial notice of the contents of each docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same). Taking judicial notice does not trigger Civil Rule 12(d). *520 S. Michigan Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1138 n.14 (7th Cir. 2008); *Whitehead v. Discover Bank*, 118 F. Supp. 3d 1111, 1118 (E.D. Wis. 2015).

## DISCUSSION

The matter before the court arises out of the complicated interaction between state receivership and federal bankruptcy law. While that interaction is, as stated, complicated, the issue before the court is much simpler than the parties make it.

Walden seeks in the Complaint only a single count of relief, a determination of the extent and priority of Walden's claim against the Property. Walden claims a secured interest in the Property by virtue of both the Illinois statute governing its appointment, 65 Ill. Comp. Stat. 5/11-31-2, and the Illinois common law relating to the reimbursement of receivers' expenses. The Debtors and First Nations each request dismissal with prejudice of the Complaint for failure to state a claim upon which relief can be granted.

A.   <u>The Standards Applicable to 12(b)(6) Motions</u>

Rule 12 of the Civil Rules provides, in pertinent part, that a party may seek dismissal of a complaint for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12 is made applicable in this matter by Rule 7012 of the Bankruptcy Rules.

As this court has stated:

> A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing sufficiency, the court views the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *Anchorbank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

*Muhammad v. Reed (In re Reed)*, 532 B.R. 82, 87–88 (Bankr. N.D. Ill. 2015) (Barnes, J.).

To meet this standard, a complaint must state a plausible claim. This means that the allegations must raise the plaintiff's right to relief above a "speculative level." *Twombly*, 550 U.S. at 570. Thus "the standard for evaluating the sufficiency of the complaint is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Anchorbank*, 649 F.3d at 614 (citation omitted); *see also Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005); *Glenn v. Calvary Invs. LLC (In re Glenn)*, 542 B.R. 833, 838 (Bankr. N.D. Ill. 2016) (Barnes, J.). The

purpose of a motion to dismiss under Civil Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

As the court stated in *Glenn*, "Rule 12(b)(6) 'authorizes a court to dismiss a claim on the basis of a dispositive issue of law.'" *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)). As the *Neitzke* court further stated, if "as a matter of law it is clear no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." *Neitzke*, 490 U.S. at 327 (internal quotation and citation omitted); *see also Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000); *Quinones ex rel. Quinones v. Ariezaga*, Case No. 07–CV–0004, 2008 WL 907442, at *3 (N.D. Ill. Mar. 31, 2008); *Murff v. LVNV Funding, LLC (In re Murff)*, Case No. 13bk44431, Adv. No. 14ap00790, 2015 WL 3690994, at *3 (Bankr. N.D. Ill. June 15, 2015) (Goldgar, J.).

Complaints for declaratory judgment do not lend themselves well to the foregoing sufficiency tests. As what is at issue is a question and not a claim to be weighed against applicable law, the foregoing standards are not a perfect fit.

The Declaratory Judgment Act authorizes federal courts to issue declaratory judgments only in cases of "actual controversy." 28 U.S.C. § 2201. As one court has stated, the inquiry turns to the following:

> A complaint for a declaratory judgment must allege facts sufficient to establish an actual controversy that is definite and concrete, involving legal relations of parties having adverse legal interests. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937). Thus, declaratory judgment is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." E. Borchard, *Declaratory Judgments* 299 (2d ed. 1941).

*Am. Home Ins. Co. v. Martin*, Case No. 92 C 1377, 1992 WL 123132, at *2 (N.D. Ill. May 28, 1992).

The Seventh Circuit has similarly stated that a declaratory judgment action must "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987); *see also Bodum USA, Inc. v. A Top New Casting Inc.*, Case No. 16 C 2916, 2016 WL 4440258, at *1 (N.D. Ill. Aug. 23, 2016) (quoting same).

One court, relying on Fourth Circuit precedent with same phrasing as the Seventh Circuit's in *Tempco*, has stated that there must be "*plausible* 'uncertainty, insecurity, and controversy' surrounding the question." *Metro. Life Ins. Co. v. Leich-Brannan*, Case No. 3:09-CV-572, 2009 WL 5062394, at *4 (E.D. Va. Dec. 15, 2009) (emphasis added). If such a question exists, absent some bar to determination such as a jurisdictional defect, lack of standing or estoppel, to name only a few, a defendant would be hard pressed to show a lack of sufficiency in a complaint for declaratory relief. *See, e.g., Gilbert v. Illinois State Bd. of Educ.*, Case No. 05 C 4699, 2008 WL 4390150, at *5 (N.D. Ill. Sept. 24, 2008), *aff'd*, 591 F.3d 896 (7th Cir. 2010).

Each of the Movants has raised such a bar here—*res judicata*/estoppel. To understand that argument, however, it is necessary first to understand Walden's claim. Thus, the court first asks whether, absent *res judicata* or estoppel, Walden's claim is plausible.

B.   <u>Walden's Claim</u>

Walden claims an interest in the Property by virtue of both the Illinois statute governing its appointment, 65 Ill. Comp. Stat. 5/11-31-2, and the Illinois common law relating to charges. There is little doubt that the nature of Walden's interest of the Property presents a question of "uncertainty, insecurity, and controversy" in the Main Case. In addition to this Adversary and Walden's Proof of Claim,[5] the question has been raised in three separate motions before the court. The Debtors have presented a plan of reorganization the treats Walden's claim as a general unsecured claim. *See* Debtor's Plan of Reorganization [Dkt. No. 56].

But is Walden's claim to a secured interest plausible? To answer that question, the court turns to each basis pled by Walden, the Illinois statute and the Illinois common law.

1.   *The Illinois Statute*

As presented by Walden, the argument that Walden has a lien by virtue of the Illinois statute is baseless. *See* 65 Ill. Comp. Stat. 5/11-31-2. The problem with this argument is that the statute, as quoted by Walden, says nothing of the sort. *See* 65 Ill. Comp. Stat. 5/11-31-2(a). Worse, however, is when the statute is viewed in its entirely.[6]

The statute, viewed in its entirety, provides for three payment mechanisms for receivers appointed thereunder.

A receiver may be compensated as follows: (a) The receiver "may use the rents and issues of such property toward maintenance, repair and rehabilitation of the property prior to and despite any assignment of rents;" 65 Ill. Comp. Stat. 5/11-31-2(a);[7] (b) The court "may further authorize the receiver to recover the cost of such maintenance, repair and rehabilitation by the issuance and sale of notes or receiver's certificates …, and such notes or certificates …, shall be a first lien upon the real estate and the rents and issues thereof, and shall be superior to all prior assignments of rents and all prior existing liens and encumbrances, except taxes;" *id.*; and (c) If the receiver completes a qualifying feasibility study, "the receiver may petition the court for reimbursement for the cost of the feasibility study from the receivership feasibility study and fee fund. The court shall … authorize reimbursement … if the court finds that the findings … are reasonable, that the fee … is reasonable,

---

[5]   Interestingly, however, the Proof of Claim fails to assert that Walden's claim is secured by anything.

[6]   In deference to Walden, it does appear at points that Walden means not to claim the statute as a basis for an interest, but rather to argue proactively to an imagined motion to dismiss on this point that the statute does not limit a receiver to the compensation sources set forth therein. Yet the court cannot ignore Walden's direct allegations at other points that the statute itself is one source of an interest in favor of Walden.

[7]   That, in and of itself, appears to be a type of interest in the subject Property. But Walden does not base its claim on this interest, perhaps because it admits that no such rents or issues exist now that the structure on the Property has been demolished.

and that the receiver is unable to obtain reimbursement other than by foreclosure of a lien on the property." *Id.*[8]

Each of the foregoing methods make clear that no lien in favor of the receiver arises thereunder. The use of the phrase "receiver's lien" is clearly a shorthand for the lien arising by action of the receiver and not an indication that a lien in favor of the receiver exists. The liens authorized above run in favor of the municipality, not the receiver. 65 Ill. Comp. Stat. 5/11-31-2(b) ("where a municipality has obtained a lien pursuant to subsection (a), the municipality may enforce such lien ....").

Taken together, the statutory method to compensate receivers appointed under this statute for their expenditures is clear: Look first to the rents and issues. *Rosenblatt v. Michigan Ave. Nat'l Bank*, 389 N.E.2d 182, 187 (Ill. App. Ct. 1979) ("For his own fees, a receiver must look first to the income generated by the subject property."). If that is insufficient, the court may order other methods of compensation. *Id.* But again, the statute governs such a request first and foremost. *Danforth v. Stone*, 128 Ill. App. 57, 60 (1906). The mechanism is very precise and has the appearance of being drafted so as to avoid liens by receivers, not encourage them.

While the court will take up Walden's contention that the statute should not be read as the sole method of compensation below, looking solely at the statute here, it is clear that Walden has no lien arising thereunder. The record of this matter is undisputed that no compensation or security of any nature was ordered by the state court.

For these reasons, the argument that Walden is entitled to an interest in the Property arising out of the statute is not plausible on its face and fails to state a claim upon which relief can be granted.

2.  *Illinois Common Law*

Walden's common law argument fares a little better. The problem with reliance upon the common law is that there is no single, binding source, and the case law is inconsistent. This requires further examination.

Without stating as much, the majority of Walden's argument in this regard is premised on the assumption that Walden is either an equity receiver or is entitled to the same compensation methods of an equity receiver, looking to the case law supporting the compensation of such receivers to support its claims.

All receivers under Illinois are not the same, however, a point on which the Illinois Supreme Court has been clear. *People ex rel. Knight v. O'Brien*, 240 N.E.2d 686, 690 (Ill. 1968). In *Knight*, a dispute arose as to whether the court could deny a statutory receiver counsel. The trial court did just that, reasoning that such receivers served at the whim of the court and the court could determine their duties, compensation and rights to counsel. *Id.*

---

[8] "The recorded lien shall be a first lien upon the real estate and shall be superior to all prior liens and encumbrances except real estate taxes. The court shall also order the receiver to reimburse the fund to the extent that the receiver is reimbursed upon foreclosure of the receiver's lien upon sale of the property." *Id.*

On mandamus, the Illinois Supreme Court disagreed. The court explained that "[i]n the ordinary equity receivership, the receiver is an officer of the court, appointed by the court, and he administers assets which are in the custody of the court; and his fees and those of his employees are set only by the court." *Id.* at 690. To that, the Illinois Supreme Court contrasted the statutory receivership before it (a savings and loan liquidation receiver), finding that the confines of the Illinois statute defined the receiver's rights and duties, not the whims of the court. *Id.* at 691.

The conclusion to be drawn from *Knight* is clear. Statutory receivers' rights and responsibilities come first from the statute, and only if the statute leaves room for it, from the common law. *Danforth*, 128 Ill. App. at 60 (finding that an assignee for the benefit of creditors is, in effect, a statutory receiver and that his duties are "*modified and controlled by the provisions of the statute.*") (emphasis added); *cf. In re Marcuse & Co.*, 11 F.2d 513, 515 (7th Cir. 1926) ("The [bankruptcy] receiver is a statutory receiver, and no practice, however general, can supersede or override this statutory provision.").

There is little doubt here that Walden is a statutory receiver, not an equity one. Walden was appointed pursuant to the powers of the statute, not under the equity powers of the court. Walden must therefore first look to the statute to define its rights and responsibilities.

The statute provides compensation mechanisms which do not include the remedy sought by Walden. Further, by stating how receivers may be compensated, the statute might be interpreted to exclude other methods. *Expressio unius est exclusio alterius. Custer v. Lincoln Nat'l Life Ins. Co. of Fort Wayne, Ind.*, 141 F.2d 144, 147 (7th Cir. 1944) (applying the same to Illinois statutes).

Still, receivers under this provision are much less independent from court supervision that that in *Knight*, and the *Danforth* court wrote that such receivers are also empowered under common law. *Knight*, 240 N.E.2d at 691; *Danforth*, 128 Ill. App at 60. The other case law surrounding this issue is also less than clear. Even though Walden is not an equity receiver, an Illinois court might nonetheless apply the rules of equity receiver compensation to it, and at least one court has noted the same. *City of Chicago v. Kideys*, 617 N.E.2d 162, 166 (Ill. App. Ct. 1993) ("[T]he proper way for Burnett to be compensated for her services is either to issue receiver's certificates under section 11-31-2, *or to place a lien against the property under Illinois common law.*") (emphasis added).

Because this is a motion to dismiss and not a motion for summary judgment, the court is not considering the ultimate merits of Walden's claim. When a claim is not implausible, Walden should be permitted to proceed. This, however, still leaves an impediment that Walden was unable to overcome in the context of the Relief from Stay Motion, that Walden appears to have had no lien on the Petition Date—the essential predicate to its claim.

Walden argues that the Illinois state courts have the power to impose liens in order to satisfy receivership expenses. That seems incontrovertible, at least as it relates to equity receivers. *Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994) ("Certainly the district court has the authority to impose a lien on property in a receivership to satisfy the receivership expenses."). That is not automatic, but by order of the court. *Gaskill v. Gordon*, Case No. 88 C 3404, 1992 WL 182249, at *2 (N.D. Ill. July 22, 1992), *aff'd in part, vacated in part on other grounds*, 27 F.3d 248 (7th Cir. 1994) ("An equity receiver must return to the court that appointed him for an order establishing a lien for his fees and expenses ...."). Such a power arises not in the statute, but in the courts' equitable powers. *First Nat'l Bank v. Illinois Steel Co.*, 174 Ill. 140, 149, 51 N.E. 200, 202 (1898) ("That a court of equity has power to

appoint a receiver and grant equitable relief ... is conceded. In such a case, whether relief will be granted is dependent upon the facts and circumstances at the time the application is made.").

Nonetheless, Walden pleads no facts to support a claim of lien having been granted prior to the Petition Date. Instead, Walden repeatedly references the court's power to grant such a lien in the abstract.

The argument that a party has today what a court may order tomorrow flies in the face of the Seventh Circuit's analysis in *Reedsburg Util. Comm'n v. Grede Foundries, Inc. (In re Grede Foundries, Inc.)*, 651 F.3d 786, 792 (7th Cir. 2011).[9] *Grede* addressed whether a state taxing authority, who had no lien on a bankruptcy petition date, could claim a prior interest in the property in question. The Seventh Circuit held that it could not, stating that the utility "only had the possibility of an interest in [the debtor's property when [the debtor] filed its bankruptcy petition." *Id.* This was because the Wisconsin statute did not guarantee a lien. It "did not fix 'a real and identifiable interest' in [the debtor's] property which could not 'be erased or altered by subsequent events.'" *Id.* at 793 (quoting *Lincoln Sav. Bank v. Suffolk Cty Treasurer (In re Parr Meadows Racing Ass'n, Inc.)*, 880 F.2d 1540, 1546 (2d Cir. 1989)); *see also Firebaugh v. McGovern*, 88 N.E.2d 473, 475 (Ill. 1949) ("the mere appointment of a receiver is an interlocutory matter effecting no determination of the right or title of either party.").

It was *Grede* that prevented the court from granting the Relief from Stay Motion and it is *Grede* that serves today as a significant impediment to Walden's claim.[10] Nothing in the Illinois common law provides for equity receivers to receive a lien except upon application to a court. Walden admits as much in the Response, when it states that "[a] court has the authority to impose a lien on property in a receivership to satisfy the receivership expenses." Resp., at p. 4.

With respect to such court-imposed liens, it is the court's view that Walden has pled itself out of court. *See, e.g., U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003) (a litigant may plead itself out of court at the motion to dismiss stage). Its own pleadings establish that no such lien had been imposed as of the Petition Date and the case law it subsequently relies on makes clear that such lien must be ordered by the court. Walden's arguments to the contrary are frivolous.

Had Walden simply asserted a lien in the manner set forth above, even at this motion to dismiss stage, the court would be forced to conclude that Walden's claim is implausible. Instead, however, in asserting an interest under Illinois common law, Walden also lays claim to a "charge." As stated in the Complaint, "[l]iability for receiver compensation and expenses creates a charge upon the Property if the liability remains unsatisfied." Compl., at ¶ 39.

The case law is replete with discussions of "charges" in favor of receivers. Walden relies on *Gaskill*, 27 F.3d at 251 ("As a general rule, the expenses and fees of a receivership are a charge upon the property administered."), which in turn, relies on *Atlantic Trust Co. v. Chapman*, 208 U.S. 360, 375-76 (1908). These cases are about equity receiverships, *i.e.* receiverships appointed by courts in the exercise of their equitable powers. *Pittsburgh Equitable Meter Co. v. Paul C. Loeber & Co.*, 160 F.2d 721,

---

[9] Here is one of the more glaring transcription errors. The Stay Hearing Transcript refers to *Grede* as "Greedy Boundaries" throughout.

[10] Yet Walden, despite knowing of the issue in *Grede* as such interest was discussed extensively at the hearing on the Relief from Stay Motion, makes no mention of *Grede* in its briefing in the Adversary.

728 (7th Cir. 1947) ("Since very early days, courts of equity have appointed receivers at the request of judgment creditors when execution has been returned unsatisfied."). While Walden is not a receiver appointed in equity, Walden has asserted a colorable claim to entitlement to compensation available to such receivers.

Neither case explains what exactly a charge is, and the courts that have considered such a charge have addressed it in inapposite ways. Some, such as *Gaskill*, make clear that, like a lien, a charge arises upon order of the court. *See, e.g., Gaskill*, 27 F.3d at 251 ("If, as here, the property is taken from the receiver's control before the receiver has been compensated, the court *may 'create against the property a charge or a burden*, and can give title in the case of a sale provisionally, or can turn the property back to the original owner provisionally, subject to the payment of certain claims.'") (emphasis added). Such an approach, however, would have the same *Grede* problem discussed above.

Other courts make such a charge appear automatic. *See, e.g., Fisher v. Hamilton (In re Teknek, LLC)*, 343 B.R. 850, 875 (Bankr. N.D. Ill. 2006) (Cox, J.) ("Ordinarily the liability for receiver compensation and legal expenses lies upon the receivership estate being administered, including the income and the *res*, and *constitutes a charge upon such property if unsatisfied*.") (emphasis added). If this is the case, Walden's claim is plausible.

In either case, it remains unclear whether such a charge is an interest in property.

It is clear that Walden faces significant burdens regarding the nature and priority of any such interest if summary judgment is requested in this matter. However, motions to dismiss are not summary judgment motions. *LaPorta v. City of Chicago*, Case No. 14 C 9665, 2017 WL 4340094, at *8 (N.D. Ill. Sept. 29, 2017) ("[A] claim's plausibility is different in kind from its sufficiency to entitle the plaintiff to summary judgment."). The Seventh Circuit has admonished that the trial court must not apply "too demanding a standard" on a motion to dismiss by inserting summary judgment considerations prematurely. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014). Unless a court finds no merit at all, a plaintiff's likelihood of success on its claims is not a factor to consider at the motion to dismiss stage. *Gibson*, 910 F.2d at 1520.

As a result, the Complaint in this limited respect is not merely speculative. While this matter lends itself to judgment on the pleadings or summary judgment, this aspect of Walden's claim is sufficient at this stage and Walden is entitled to move forward and, if applicable, offer evidence to support its claim.

C.    <u>The *Res Judicata*/Estoppel Effect of the Relief from Stay Ruling</u>

Both First Nations and the Debtors argue that this court's prior ruling on the Relief from Stay Motion should be given *res judicata* or estoppel effect here. In that ruling, the court rejected Walden's argument that it had a lien in the Property as the Illinois case law makes clear that any such lien would need to be expressly ordered by the state court. *See, e.g., Gaskill*, 27 F.3d at 251. No such state court order exists here.

The court further rejected Walden's relation back argument. There Walden claimed that because the receiver liens set forth in the statute, once granted, are referred to as "first and prior",

such liens must relate back for the purposes of sections 362(b)(3) and 546(b)(1)(A) of the Bankruptcy Code.

The court found a similarity between *Grede* and the facts at bar. As in *Grede*, the statute under which Walden was appointed receiver provide for no lien in favor of the claimant. The primary method of compensation is out of the rents and issues of the property. 65 Ill. Comp. Stat. 5/11-31-2(a). A receiver may, if authorized by the court, sell notes or receiver's certificates, each of which may be secured in the property. *Id.* That lien may be authorized by the court if the foregoing compensation is inadequate, either under the specific terms of the statute or, if Walden is correct, as granted by the court under the law governing equity receiverships. Each would be as ordered by the court at some later date, however.

As in *Grede*, therefore, the receiver here has no guarantee of a lien. For the court to assume that Walden may get the lien it wishes, the court must hypothesize what the state court would do on an application for such—an application that is not even in existence. A party who aspires to an improved status but is thwarted by the automatic stay states no grounds for relief by its aspirations alone. Stopping such actions is precisely why the stay exists. For these reasons, the court rejected Walden's argument and denied the Relief from Stay Motion.

This, however, has neither the *res judicata* nor estoppel effect that the Movants desire.

It is true that rulings on motions for relief from stay are final and appealable. *Camacho v. Doral Financial Corp. (In re Rodriguez Camacho)*, 361 B.R. 294, 299 (1st Cir. BAP 2007) ("An order granting relief from stay is a final order."); *Klein v. Estate of Zvunca*, 562 B.R. 739, 745 (E.D. Wis. 2016); *see also Germeraad v. Powers*, 826 F.3d 962, 965 (7th Cir. 2016) ("An order in a bankruptcy case is considered final when it resolves one of the individual controversies that might exist as a standalone suit outside of bankruptcy."). Some courts have therefore determined that such rulings have *res judicata* effect. *See, e.g., Jefferson v. Mississippi Gulf Coast YMCA, Inc.*, 73 B.R. 179, 182 (S.D. Miss. 1986). As *Jefferson* makes clear, however, the *res judicata* effect is as to whether the conditions for lifting the stay exist. To seek a broader effect, for example, to have the court's factual determinations preclude factual disputes in other contexts, belies the nature of relief from stay proceedings.

While it is true that the traditional elements of *res judicata* and estoppel may appear to be implicated here, *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014), the Seventh Circuit has made clear that relief from stay proceedings are "summary proceedings." *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990). Other circuits agree. *See, e.g., Estate Constr. Co. v. Miller Smith Holding Co., Inc.*, 14 F.3d 213, 219 (4th Cir. 1994); *Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26, 33 (1st Cir. 1994); *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740 (9th Cir.), *cert. denied*, 474 U.S. 828 (1985); *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 658 (S.D.N.Y.), *aff'd*, 962 F.2d 1 (2nd Cir. 1991); *see also Dysart v. Trustmark Nat'l Bank*, Case No. CV-13-BE-2092-S, 2015 WL 1923983, at *14 (N.D. Ala. Apr. 28, 2015), *reconsideration denied*, Case No. CV-13-BE-2092-S, 2015 WL 5579921 (N.D. Ala. Sept. 21, 2015) (collecting cases). These are not the full proceedings that such determinations require for finality.

Taken to its logical conclusion, the Movants' argument here would put creditors at risk of having their claims finally adjudicated in summary proceedings simply by having moved for relief from stay. Given the limited nature of stay relief proceedings, that simply cannot be the case. As a

result, the court cannot hold that Walden is now precluded from claiming an interest in the Property.

To be clear, that is all that Walden's Complaint can correctly be viewed to do. While the Movants here attempt to narrow the Complaint to match their *res judicata* and estoppel arguments, the question presented by Walden in the Complaint is broader than that posed in the Relief from Stay Motion. True, Walden muddies these waters by conflating charges with liens and a lien is clearly what Walden aspires to. The Complaint, however, is not so limited. Walden asks for a declaration of its interest in the Property, and while it may not have a lien, there is still a colorable claim to an interest left to consider.

Walden also muddies the waters by praying for relief based on its presumed lien.[11] In the court's view, the extraordinary relief sought by Walden must be sought independently in the context of the bankruptcy case if and when Walden succeeds on the Complaint. It has a broader impact on the Main Case than just that between the parties. Regardless, this does not change the essential, declaratory nature of the Complaint.

As a result, the Movants' *res judicata* and estoppel arguments fail, both because of the limited nature of stay relief proceedings and because the question presented here is not the same as that presented in the prior hearings.

## CONCLUSION

Having considered all of the foregoing, the court therefore concludes that the Motions to Dismiss must be denied, at least insofar as Walden has claimed a prepetition charge against the Property. The parties should be prepared, however, when they next appear before the court in this matter, to discuss the early resolution of this proceeding by way of judgment on the pleadings or summary judgment.

As a result, the Motions to Dismiss will be DENIED. A separate order will be issued concurrent with this Memorandum Decision to that effect.

Dated: December 21, 2017

Timothy A. Barnes
United States Bankruptcy Judge

---

[11] Walden prays for relief based on the aspired to lien, further complicating the Complaint. While arguably such requests are not beyond the scope of declaratory judgments outside of bankruptcy, 28 U.S.C. § 2202 (allowing "further necessary or proper relief" to be granted against any adverse party in a declaratory judgment action), such further relief is not essential to a declaration of the parties' rights. 28 U.S.C. § 2201(a) (court "may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought*.") (emphasis added).